**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**"BROWARD DIVISION**

**CASE NO.**

WILLIAM MAGUIRE, an individual,

    Plaintiff,

v.

HONG KONG INTERNATIONAL AVIATION LEASING CO., LTD.,
A Hong Kong Limited Liability Company.;
SANYA ARTEMIS YACHT ENTERTAINMENT CO., LTD., a Chinese Limited Liability Company,

Defendants.

_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, William Maguire, ("Plaintiff"), individually, sues Defendants, Hong Kong International Aviation Leasing Co. Ltd. ("HK INTERNATIONAL"), a Hong Kong Limited Liability Company and Sanya Artemis Yacht Entertainment Co., Ltd., a Chinese based Company (collectively "Defendants"), for damages and in support thereof alleges:

### I.   INITIAL STATEMENT

1. This is an action for the injury of Plaintiff, Captain William Maguire, a seaman injured while working as the master of the Vessel M/Y LOHENGRIN (the "Vessel), a 161-foot private yacht owned and/or operated and/or managed by Defendant, HONG KONG INTERNATIONAL AVIATION LEASING CO., LTD., at all relevant times.

2. Defendants' negligence in maintaining and/or operating and/or managing and/or up keeping the Vessel, as well as its failure to provide a seaworthy vessel were the direct cause of Plaintiff's injuries.

## II. PARTIES AND JURISDICTION

3. This matter is brought in admiralty and under the Jones Act.  Pursuant to 28 U.S.C. § 1333, 46 U.S.C. § 688 and the General Maritime Law of the United States this action is within this Court's subject matter jurisdiction.

4. This Court has personal jurisdiction over each of the Defendants pursuant to Florida Statute § 48.193, as explained further below.

5. Venue is proper in this Court in Broward County in that a substantial part of the events or omissions giving rise to the claim occurred therein.

6. This Complaint asserts a cause of action for the injuries Plaintiff, citizen of the United States and being a once residence of Broward County, Florida, suffered under the general maritime law.

7. Plaintiff is a professional boat captain and was acting within the course and scope of his employment with HK INTERNATIONAL as Captain of the Vessel at all times material hereto.

8. The Vessel is a 161 foot private yacht owned and/or operated and/or managed by Defendants, which was purchased in South Florida by Defendants and captained and managed by Plaintiff.

9. Defendant, HK INTERNATIONAL is a Hong Kong based limited liability Company, and was the record owner of the Vessel when Plaintiff was hired, during his employment, and at the time of his injuries.

10.     Defendant, Sanya Artemis Yacht Entertainment Co. Ltd., is a Chinese based limited liability Company who employed William Maguire on behalf of HK INTERNATIONAL to Captain the Vessel. Sanya Artemis Yacht Entertainment is the charter company responsible for managing the Vessel on behalf of HK INTERNATIONAL.

### Personal Jurisdiction over Defendant HK INTERNATIONAL pursuant to Fla. Stat §§ 48.193(1) (a) – SPECIFIC JURISDICTION

11.     HK INTERNATIONAL is subject to the jurisdiction of this court pursuant to Fla. Stat. §48.193(1)(a) because this suit arises out of or is related to HK INTERNATIONAL's business contacts with this forum state.

12.     First, HK INTERNATIONAL purchased the Vessel within Florida waters.  On November 22, 2011, HK INTERNATIONAL purchased the Vessel within Florida waters from non-party Plus Investment, Ltd., a Grand Cayman Island Corporation.

13.     Second, following the closing HK INTERNATIONAL kept its newly purchased charter Vessel in Florida waters for two months where HK INTERNATIONAL, by and through its agents and the vessel's Florida crew, performed maintenance and repairs on the yacht with Florida yacht repair and maintenance businesses.

14.     Third, HK INTERNATIONAL solicited Florida based captains and crew and stewardesses to work on the Vessel. During the purchase of the Vessel, Peter Miller, the captain from 2011 until the time of his death (prior to the hiring of Captain William Maguire) was a resident of Florida with a home in Ft. Lauderdale.  HK INTERNATIONAL, through its manager and other agents, communicated with Captain William Maguire regarding employment as Captain on the Vessel through phone calls; Captain Maguire works as a yacht captain for hire out of South Florida.

    a. From 2011 until recently, HK INTERNATIONAL has continuously hired crew members that lived in Florida. For instance, following the closing in 2011, Irina Kelemen, a Ukrainian national living in Florida became a crew member, and worked with the Vessel until December 2012. To replace Irina Kelemen, HK INTERNATIONAL hired Halyna Ivakhiv also living in Florida to act as crew.

    b. All Western based crewmembers during this time were based in Florida and expected to be repatriated back to Florida during shore leave or at the end her service on board.

15. Fourth, HK INTERNATIONAL, by and through its agents, contracted with Florida businesses to provide (1) repair services and yacht parts to the Vessel and (2) provide travel arrangements to its crew as they moved to and from the yacht.

    a. While the Vessel was having electrical issues with its shore power connection, HK INTERNATIONAL contracted for engineering and repairs services with a Broward County based marine engineering company, non-party ATLAS MARINE SYSTEMS.

    b. While the Vessel was having electrical issues with its shore power connection, HK INTERNATIONAL contracted with South Florida based marine part supplier Fathom Supply, for parts to effectuate the repair.

16. As part of his terms of employment Plaintiff was recognized as a United States based Captain who would be repatriated to the U.S. at the end of his service.

17. Based on the above, pursuant to Fla. Stat. §48.193(1)(a), HK INTERNATIONAL continued its business within the State of Florida by purposefully recruiting or soliciting

American captains and crew, from Florida and is therefore subject to jurisdiction within this State for causes of action arising from or related to those activities.

18. Based on the above, furthermore, pursuant to Fla. Stat. §48.193(1)(f), HK INTERNATIONAL also caused an injury inside this state to Plaintiff by acts committed outside the State because HK INTERNATIONAL was engaged in solicitation activities within the State by purposefully recruiting and soliciting American captains from Florida and is therefore subject to jurisdiction within this State for causes of action arising from or related to those activities.

**Personal Jurisdiction over Defendant HK INTERNATIONAL pursuant to Fla. Stat §§ 48.193(2) – GENERAL JURISDICTION**

19. HK INTERNATIONAL is also subject to the jurisdiction of this Court pursuant to Fla. Stat. §48.193(2) because the Defendant has engaged in substantial and not isolated activity within the forum state.

20. Defendant HK INTERNATIONAL has maintained systematic and continuous business contacts with this forum state of Florida as follows:

   a. First, HK INTERNATIONAL purchased the Vessel within Florida waters.
      i. On November 22, 2011, HK INTERNATIONAL purchased the Vessel within Florida waters from non-party Plus Investment, Ltd., a Grand Cayman Island Corporation.
   b. Second, HK INTERNATIONAL performed a vessel closing in Florida waters.
   c. Third, following the closing HK INTERNATIONAL kept its newly purchased charter Vessel in Florida waters for two months where HK INTERNATIONAL, by and through its agents and the vessel's crew, performed

maintenance and repairs on yacht with Florida yacht repair and maintenance businesses.

d.   Fourth, HK INTERNATIONAL solicited Florida based captain and crew and stewardesses to work on the Vessel.

   i. Following the sale of the Vessel from Plus Investment to HK INTERNATIONAL, HK INTERNATIONAL began crewing its Vessel with Florida based crew.

  ii. HK INTERNATIONAL's desire was to have Florida based crew at the helm of the Vessel.

 iii. HK INTERNATIONAL desired to have Florida based crew because Florida crew is renowned worldwide as an epicenter of premium yacht services.

  iv. HK INTERNATIONAL wanted to become a world class charter yacht with world class yacht charter service.

   v. Therefore, HK INTERNATIONAL reached into Florida for all its crew based needs.

  vi. For instance, Peter Miller, the captain of the Vessel from 2011 at the time the it was purchased, was a resident of Florida. Also, following the closing in 2011, Irina Kelemen, a Ukrainian national living in Florida was signed on to the Vessel as crew and worked with the Vessel until December 2012.

 vii. To replace Irina Kelemen, HK INTERNATIONAL hired Halyna Ivakhiv another Florida resident to act as crew.

    viii. All western based crewmembers were based in Florida and expected to be repatriated back to Florida during shore leave or at the end of their voyages on board.

    ix. In around April of 2011, for a second time, HK INTERNATIONAL, by and through their agents, Sanya Artemis Yacht Entertainment Co., Ltd. offered a an American Captain, Plaintiff, a contract to act as captain of the Vessel.

e.     Fifth, HK INTERNATIONAL, by and through its agents, contracted with Florida businesses to provide (1) repair services and yacht parts to the Vessel and (2) provide travel arrangements to its crew for travel to and from the yacht. As an example, and at this time it was known to the Plaintiffs, that:

  i. The Vessel was having electrical issues with its shore power connection and HK INTERNATIONAL contracted for engineering and repairs services with marine engineering company, non-party ATLAS MARINE SYSTEMS; and

  ii. The Vessel was having electrical issues with its shore power connection and HK INTERNATIONAL contracted with South Florida based marine part supplier, Fathom Supply, for parts to effectuate the repair ATLAS MARINE was working on.

21. Based on the above, the Defendants have purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws sufficient to establish minimum contacts and the U.S. Constitution's Due Process Clause.

### III.     MATERIAL FACTS

22. The Plaintiff's employment with Defendants was initiated through Andrew Yang, a purported representative of the owners behind the HNA Group enterprise.

23. After several months of contact, on April, 18, 2014, Plaintiff first received an official job offer requesting that he take command of the Vessel. A copy of the offer is attached hereto as Exhibit X.

24. The job offer contracted Plaintiff for a year of employment between HK INTERNATIONAL and the Plaintiff.

25. Plaintiff departed on April 23, 2014 from the U.S. to Sanya, Hainan, China, where the vessel was moored awaiting some repair work.

26. After a brief layover in Hong Kong, on April 26, 2014, Plaintiff finally arrived at Sanya and was able to survey the subject vessel for the first time.

27. During his review, Maguire discovered for the first time numerous red flags concerning the maintenance and the operation of the vessel by Defendants, which had not been disclosed to him at any prior point.

28. Specifically, Plaintiff was surprised by the lack of experience of the existing Chinese crew aboard the vessel, the dangerous condition of the vessel and the overall lack of knowledge of the Defendants' representatives regarding the operation of a motor yacht.

29. As part of the terms of employment Plaintiff was supposed to receive half of his monthly salary upon his arrival at Sanya. However, when Plaintiff demanded this portion of his salary, HNA Group refused to pay his wages.

30. Nevertheless, after some push back from HNA Group representatives, Plaintiff threaten with his departure if he was not paid his salary. Eventually HNA Group agreed and paid Plaintiff's initial owed salary – half his monthly salary.

31. On April 29, 2014, during the mid-afternoon, Plaintiff had lunch in the local mess hall located in the marina where the Vessel was being repaired.

32. After finishing his lunch, Plaintiff left the mess hall and proceeded to return to the Vessel in order to continue performing his duties.

33. To get back to the boat, Plaintiff had to cross a floating ramp in order to access the vessel. As Plaintiff stepped off the ramp onto a flat skid plate at the end of the ramp, it caused him to lose his balance and fall on top of his shoulder. This skid plate was used as a step off contraption for all pedestrians and was necessary to get to the boat. Normally these plates have an anti-slip surface that prevents any slipping. However, the plate in this case did not have any such safety feature and instead was covered in dust from a nearby construction, making it even more dangerous.

34. Furthermore, the ramp upon which Plaintiff slipped was not properly maintained. Specifically, the surface was designed to have a continues anti-slip diamond plate surface on the top in order to provide users with the appropriate amount of grip while stepping off it; however, the surface did not have such a matt at the time Plaintiff fell.

35. As a result of this slip, Plaintiff suffered substantial pain in the following days and had limited movement of his entire arm.

36. Immediately after he slipped Plaintiff reported this unfortunate event to the HNA representative in charge of managing the Vessel, who suggested that Plaintiff visit a local hospital for diagnosis of his injury.

37. Although Plaintiff was very concerned with his injury he was also under pressure from HNA superiors to finish the repair of the Vessel in order to move it to Hong Kong as fast as possible.

38. Finally, under continuous pain from his shoulder without relief, the Plaintiff decided to attend a local hospital. During his diagnostic at the local Chinese hospital the attending doctor improperly performed an X-ray and MRI by not including contrasting dye and the Plaintiff was misdiagnosed as not having suffered a major injury that required treatment. Thus, Plaintiff continued to deal with his shoulder pain while attempting to finalize major repairs on the Vessel.

39. Once the repairs to the Vessel were finalized, Plaintiff attempted to move the Vessel to Hong Kong. However the process, through no fault of Maguire's own, was delayed.

40. Soon thereafter Maguire was repatriated to the U.S. in order for him to seek treatment which he could not find in China.

41. However, even in light of his limited condition and constant pain, Defendants failed to provide, pay or otherwise support adequate medical assistance to Plaintiff. Instead, Defendants purposefully withheld part of Plaintiff's salary and refused to provide sufficient funds for his adequate return to the U.S.

42. Moreover, the Defendant has failed to pay and provide any maintenance and cure to the Defendant during his time of convalescence.

43. Based on the above, Plaintiff's injury and resulting pain and suffering resulted during his employment with Defendant HK INTERNATIONAL because HK INTERNATIONAL, who failed to provide adequate crew and, financial support and the repairs necessary to maintain a safe Vessel.

### COUNT I: FAILURE TO PAY SEAMAN WAGESUNDER GENERAL MARITIME LAW AND PENALTY WAGES PURSUANT TO 46 U.S.C. §10313

Plaintiff readopts and re-alleges paragraphs 1 through 43, and further alleges:

44. Under the General Maritime Law, the Plaintiff, as a seaman, upon Plaintiff becoming injured in the service of the Vessel, has the right to recover for unearned wages for the wages he would have received if he had not become sick or injured.

45. A seaman has the right to recover those wages owed to him from the point of injured until the end of the voyage or the period or season for which he was employed. This includes overtime, bonuses, compensatory time, tips, accumulated shore leave and similar benefits.

46. Defendant has refused to pay Plaintiff for any outstanding wages owed to him during this injury time.

47. Defendant's delay, failure and/or refusal to pay Plaintiff's wages is, willful, arbitrary, capricious, and in disregard of the Plaintiff's rights as a seaman and therefore Plaintiff is also owed penalty wages pursuant to 46 U.S.C. §10313(g).

WHEREFORE, Plaintiff demands judgment against Defendants together with any and all compensatory damages, including lost wages and statutory penalty wages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees, costs as permitted and any other relief that this Court deems proper.

## COUNT II: BREACH OF CONTRACT

48. Plaintiff readopts and re-alleges paragraphs 1 through 43, and further alleges:

49. Plaintiff was hired to perform his yacht captain duties for one (1) per his agreement with the Defendants.

50. The Defendants have failed to pay the Plaintiff eleven months of those wages per the agreement at $11,000.00 per month.

11

51. Therefore the Defendants have breached their agreement with Plaintiff and the Plaintiff have been damaged in the amount of $121,000.00

52. Further, at the time of his return to the U.S., Plaintiff was owed outstanding out of pocket expenses.

53. Pursuant to Plaintiff's terms of employment, Plaintiff was to be reimbursed for all employment out of pocket expenses.

54. The expenses incurred were wholly, exclusively and necessarily incurred on the Company's business. They include accommodations, food, and various expenses for crew.

WHEREFORE, Plaintiff demands judgment against Defendant together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees, costs as permitted and any other relief that this Court deems proper.

## COUNT III: FAILURE TO PROVIDE ADEQUATE MAINTENANCE AND CURE

55. Plaintiff readopts and re-alleges paragraphs 1 through 43, and further alleges:

56. Under the General Maritime Law, Plaintiff as a seaman, is entitled to recover maintenance and cure from Defendants until he is declared to have reached maximum possible cure.

57. Maintenance and cure provides a seaman, who is injured or ill while in the service of a ship, medical care and treatment, and the means of maintaining him or herself, while recuperating.

58. Among the most pervasive incidents of the responsibility anciently imposed upon a ship owner for the health and security of seamen, was liability for the maintenance and cure of seamen becoming ill or injured during the period of their service. In the United States, this obligation bas been recognized consistently as an implied provision in contracts of marine

employment. Created thus with the contract of employment, the liability, in no sense is predicated on the fault or negligence of the ship owner.

59. Plaintiff, a seaman, is entitled to maintenance and cure until he reaches maximum possible cure, irrespective of whether the illness or injuries were received by negligence or accident. Plaintiff in this case was in the service of the ship when he suffered his injury.

60. Upon Plaintiff, becoming ill and injured, aforesaid, it became the duty of Defendants to furnish Plaintiff with prompt medical care and attention and medicines, including expenses of his maintenance and cure, and his unearned wages to the end of the voyage.

61. That Defendants have neglected and failed to pay the expenses of his maintenance while incapacitated, and all his maintenance and cure, and his unearned wages to the end of the one year employment contract.

62. As a direct and proximate result of the negligent act(s) and/or omission(s) by Defendants and/or the Defendants' employee{s), servant(s) and/or agent(s), Maguire suffered harm, including, without limitation, bodily injury, pain and suffering, disability, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and/or nursing care and/or treatment, loss of earnings, loss of ability to earn money and/or aggravation of a previously existing condition, including out of pocket expenses in the amount of in the amount of approximately $12,207.25, which are increasingly daily. One or more of the losses are permanent and/or continuing, and Maguire will suffer the loss(es) in the future.

WHEREFORE, Plaintiff demands judgment against Defendants and the, Lohengrin, together with any and all compensatory damages, punitive damages, statutory interest as

permitted, prejudgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

## COUNT IV: JONES ACT NEGLIGENCE CLAIM

63. Plaintiff readopts and re-alleges paragraphs 1 through 43 and further alleges.

64. At all times material, the Defendant Sanya Artemis was the Plaintiff's Jones Act Employer and had a fundamental absolute and non-delegable duty under the Jones Act, 46 U.S.C. Section 688, to provide the Plaintiff with a reasonably safe place to work and use ordinary care to maintain the vessel in a relatively safe condition.

65. Sanya Artemis is liable in damages for injury resulting in whole or in part from the negligence of its officers, agents, or employees.

66. Plaintiff's slip, fall and the injury were due to the negligence of the Sanya and/or its agents, servants, and/or employees, including, without limitation, as follows:

    a. Per the allegations above and incorporated herein, in negligently requiring Plaintiff to work under such conditions that Plaintiff was incapable of appreciating the hazardous nature of his assigned tasks and duties.

    b. Per the allegations above and incorporated herein, by failing to provide a safe ease and path to and from the Vessel for the crew and captain.

    c. Per the allegations above and incorporated herein, in negligently failing to provide adequate manpower to operate a vessel like the Lohengrin.

67. That as a further direct and proximate result of the above-described negligence of Sanya, Plaintiff has in the past and in the future will suffer and incur the following damages: cost and expense of medical care, attention and treatment, the cost of travel necessary to secure said medical care; loss of earnings and a loss or impairment of earning capacity

and working ability; pain and suffering, mental anguish, disfigurement, disability, inconvenience and loss of enjoyment of life.

WHEREFORE, the Plaintiff demands judgment against Sunset together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted and any other relief that this Court deems proper.

## COUNT V. UNSEAWORTHINESS

68. Plaintiff readopts and realleges paragraphs 1 through 43, and further alleges.

69. Sanya had the absolute, non-delegable duty to provide Plaintiff with a seaworthy vessel.

70. The unseaworthiness of Sanya's vessel was a legal cause of injury and damage to Plaintiff by reason of one or more of the following:

    a. The crew was forced to labor under long, unaccommodating conditions which made the tasks being performed unreasonably more difficult; and/or

    b. The vessel was not reasonably fit for its intended purpose as the Vessel had failed to be maintained in an adequate and safe manner for its crew, and or

    c. The Vessel was unsafe and not reasonably fit for its intended purpose in that it failed to provide a safe ease and path to and from the Vessel for the crew and captain.

    d. The vessel had an insufficient crew for the tasks being performed aboard the Lohengrin; and/or

71. As a result, Plaintiff suffered harm, including, without limitation, bodily injury, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical treatment, loss of earnings, loss of ability to earn money and/or

aggravation of a previously existing condition. One or more of the losses are permanent and/or continuing, and Plaintiff will suffer the losses in the future.

WHEREFORE, the Plaintiff demands judgment against Sunset together with any and all compensatory damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted and any other relief that this Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any issue triable of right by a jury.

Dated: July 17, 2015

Respectfully Submitted,

Moore & Company, P.A.
Counsel for Plaintiff
355 Alhambra Circle, Suite 1100
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Email: michael@moore-and-co.net
Email: swagner@moore-and-co.com

**/s/ A. Benjamin Chiriboga**
_____
Michael T. Moore, Esq.
Florida Bar No. 207845
Scott A. Wagner, Esq.
Florida Bar No. 10244
A. Benjamin Chiriboga, Esq.
Florida Bar No. 75028